UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00552-MOC-DSC

| | | |
|---|---|---|
| **JAMES ROBERT WHITE,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| **GASTON COUNTY BOARD OF EDUCATION,** | ) ) ) ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss the Amended Complaint (#20). The matter has been fully briefed and is ripe for review. Having considered the motion and reviewed the pleadings, the court enters the following Order.

**FINDINGS AND CONCLUSIONS**

**I.   Background**

This is an employment discrimination suit brought by an education administrator against a county board of education. Plaintiff alleges claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964 and Title IX of the Education Act of 1972, 20 U.S.C. § 1681 *et seq.* See Amended Complaint (#19).

Plaintiff White was an administrator within the Gaston County School System until July 2013. Dr. White claims that the decision to not renew his employment contract was motivated by race discrimination and retaliation. Amended Complaint (#19) ¶ 24. *Inter alia*, the plaintiff alleges

-1-

that the retaliatory behavior occurred after he reported a student's sexual assault and complained to his superiors that the resulting investigation was insufficient. See Amd. Compl. (#19) ¶¶ 10-14.

## II.     Applicable 12(b)(6) Standard

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) that the "no set of facts" standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

Post-Twombly, the Court revisited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned,

the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts. Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. A plaintiff need not, however, demonstrate that his right to relief is probable or that alternative explanations are less likely; rather, he must merely advance his claim "across the line from conceivable to plausible."

Twombly, 550 U.S. at 570. If his explanation is plausible, his complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation

## III. Discussion

Defendant has lodged a Motion to Dismiss (#20) and accompanying Memorandum (#21) alleging the failure to state a claim upon which relief can be granted. In support of its Motion, defendant makes several arguments.

The most compelling question before the court is not whether plaintiff has pled sufficient facts, which the court finds that she has, but instead how the plaintiff coalesces these facts to form one or more cognizable cause of action. As currently pled, the facts are sufficient to raise one or more claims of race discrimination and/or retaliation. That said, the pleadings conflate one or more areas of law. The plaintiff must be clear about the causes of action that he alleges and the applicable sources of law.

### A. Section 1983 Claim based on Deprivation of Equal Protection

The defendant asks the court to dismiss plaintiff's Section 1983 action (Claim One). Def. Motion (#20) at 1. Brought under 42 U.S.C. § 1983, plaintiff alleges that the Board—as a state actor—subjected the plaintiff to disparate treatment due to his race, which he contends deprived him of his right to Equal Protection under the 14th Amendment to the United States Constitution and under a similar provision of the North Carolina Constitution. Amd. Compl. (#19) ¶¶ 31-32. The Court notes that Section 1983 is a vehicle for seeking redress for violation of federally protected rights, not rights provided by states.

To successfully allege a violation of Section 1983, plaintiff must plausibly allege that a state actor (1) "deprived plaintiff of a right secured by the Constitution and laws of the United

States" while (2) acting under color of state law. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Defendant does not take issue with its status as a state actor; rather, they contend that plaintiff's assertion of a violation of Fourteenth Amendment protection is not appropriate where a more specific protection is afforded under other federal statutes or other provisions of the Constitution.

The Fourteenth Amendment's Equal Protection Clause provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." Orgain v. City of Salisbury, Md., 305 F. App'x 90, 97–98 (4th Cir. 2008) (citation omitted). Defendant Board claims that the plaintiff's first claim should be dismissed as they are based upon the Equal Protection Clause. Defendant notes that retaliation claims are often brought under Title VII or the First Amendment, and claims that there is no valid action for retaliation under the Equal Protection Clause. Def. Memorandum (#21) at 5. In support of this argument, defendant cites, *inter alia*, to the Fourth Circuit's decision in Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999).

In Edwards, a police officer brought a Section 1983 action after his dismissal for obtaining secondary employment without permission. In that case, the dismissed officer claimed that his free speech rights had been violated as he was not able to teach a class outside of work. The Fourth Circuit held that the equal protection claim was "best characterized as a mere rewording of his First Amendment retaliation claim," and was properly dismissed by the district court. Id. at 250. Moreover, the Edwards court noted that the plaintiff had "not alleged that the Defendants

disciplined him because they harbored animosity toward him personally, and that "all allegations in the complaint point to the conclusion that the discipline was in retaliation for Sergeant Edwards' exercise of his rights to free speech and freedom of association under the First Amendment." Id.

As defendant has noted, plaintiff has not asserted claims under Title VII or under the First Amendment. Even so, a failure to plead a Title VII claim alongside a § 1983 equal protection claim need not be fatal to plaintiff's case. See Booth v. Maryland, 327 F.3d 377, 383 (4th Cir. 2003) ("[W]e are unpersuaded that the viability of a § 1983 claim hinges upon whether a plaintiff pleads a Title VII claim alongside it.") (citation omitted). That being said, Edwards itself noted that "a pure or generic retaliation claim ... simply does not implicate the Equal Protection Clause." 178 F.3d at 250.

Edwards is readily distinguishable from the case at bar. As defendant has noted, plaintiff has not pled a First Amendment cause of action; rather, the instant case alleges personal animosity that was not present in Edwards. That said, Section 1983 "is not itself a source of substantive rights," but provides litigants with a procedure that allows them to vindicate "federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979).

In considering a Section 1983 claim, a court must first identify the specific constitutional right purportedly infringed. Graham v. Connor, 490 U.S. 386, 394 (1989). The catchall "due-process" analysis afforded under the Fourteenth Amendment is inapplicable where a more specific, textual amendment applies to the specific constitutional harm asserted. Henderson Amusement, Inc. v. Good, 172 F.Supp.2d 751, f.n. 4 (W.D.N.C. 2001), aff'd, 59 Fed.App'x. 536 (4th Cir.2003),

abrogation on different grounds recognized, Gantt v. Whitaker, 203 F.Supp.2d 503 (M.D.N.C.2002).

In the instant case, the more specific constitutional rights are those guaranteed by the First Amendment, not those of the Fourteenth. Plaintiff's claims are more properly alleged as a cause of action under the constitution's First Amendment protections.

The First Amendment to the United States Constitution, in relevant part, provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Fourteenth Amendment makes this prohibition applicable to the states. See Fisher v. King, 232 F.3d 391, 396 (4th Cir. 2000). First Amendment protections extend to "the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "The government may not retaliate against a public employee who exercises her First Amendment right to speak out on a matter of public concern. This means, for example, that [a] state may not dismiss a public school teacher because of the teacher's exercise of speech protected by the First Amendment." Love-Lane v. Martín, 355 F.3d 766, 776 (4th Cir. 2004) (internal citations and quotation marks omitted).

A public employee must establish several elements to state a claim for deprivation of First Amendment rights flowing from an adverse employment action: (1) the employee spoke as (i) a citizen on a (ii) matter of public concern; (2) the employee's and the public's interests in the First Amendment expression outweigh the employer's legitimate interest in the efficient operation of the workplace, if that interest was infringed by the communication, and (3) the protected speech is

a substantial factor in the decision to take adverse employment action. Smith v. Gilchrist, 749 F.3d 302, 308 (4th Cir. 2014).

In the instant case, plaintiff alleges that he made complaints about a sexual assault allegedly perpetrated against an African-American student by a white teacher. After the complaint was made and a meeting occurred involving the NAACP and others, the plaintiff alleges that a hostile work environment was created. In this argument, plaintiff was eventually provided with negative performance reviews and his contract was not-renewed. All of the adverse actions alleged and the hostile environment in plaintiff's set of facts resulted from the plaintiff's First Amendment action—his complaint about the investigation of the sexual assault.

Plaintiff is granted leave to amend the Complaint for a second time as to remove the Equal Protection Clause claim and substitute an analysis under the First Amendment.

**B.      Section 1981 Claim for Interference with Contract Based on Race**

In Cause Two of the Amended Complaint, plaintiff asserts a claim under 42 U.S.C. § 1981, contending that defendant terminated his public employment contract based on his race. As the parties acknowledge, while a freestanding claim under Section 1981 may be brought against private employers for similar racially based actions, a claim against a municipal employer under Section 1981 must be brought under Section 1983.

The Supreme Court has ruled "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units...." Jett v. Dallas Independent School District, 491 U.S. 701, 771 (1989), *abrogation by statute in other parts recognized by* Dennis v. Cnty. of Fairfax, 55 F.3d 151, 153 n.

1 (4th Cir. 1995). As pled, Cause Two cannot survive analysis under Rule 12(b)(6) as no freestanding claim against a municipal employer exists under § 1981. Instead, plaintiff should have stated the substance of such claim under Section 1983, to wit, that defendant, acting under color of state law, deprived him of his right secured under Section 1981 to be free from interference with his public employment contract based on his race.

Rather than grant the Motion to Dismiss, the court will allow plaintiff 14 days within which to file a Second Amended Complaint reasserting his Section 1981 claim as a *separate* Section 1983 claim for interference with his Section 1981 right to be free from interference with contract based on race. Plaintiff is cautioned to avoid conflation of this separate claim with his first cause of action under Section 1983, which is based on the First Amendment.

### C. Cause Three: Title VI Violation

In Cause Three, plaintiff asserts a private right of action under Title VI of the Civil Rights Act of 1964, a provision which prohibits, *inter alia*, racial discrimination in programs receiving federal funds. While Title VI is, in the main, a provision which allows federal agencies to take away funds from state and municipal programs that engage in discriminatory practices, it is well-settled that Title VI does provide a private cause of action to those harmed by the discriminatory practices of entities receiving federal funds. See Cannon v. Univ. of Chicago, 441 U.S. 677, 716 (1979).

In its Motion to Dismiss, defendant contends that plaintiff has failed to allege sufficient facts to show a causal connection between protected activity and the adverse employment action. Defendant argues that there simply is no temporal proximity between the events. The Court finds

that such arguments are better considered at the summary judgment stage; therefore, defendant's motion will be denied without prejudice.

D. **Title VI and Title IX Claims: Relevant Statute of Limitations**

Defendant also argues that the applicable statute of limitations bars all of Plaintiff's Title VI and Title IX allegations of retaliation that occurred prior to the non-renewal of his contract. Motion (#20) at 2. Referencing similar state statutes when considering federal claims, defendant contends the applicable statute of limitation in North Carolina is three (3) years. See Rouse v. Duke University, 535 Fed.App'x. 289 (4th Cir. 2013); Franks v. Ross, 313 F.3d 184 (4th Cir. 2002).

In the Amended Complaint (#19), plaintiff alleged that he was "routinely subjected to discriminatory treatment within a hostile environment, in terms of work conditions, privileges, and benefits because of his race." ¶ 39. The Supreme Court has recognized that anti-retaliation provisions must be construed to "cover a broad range of employer conduct." Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173 (2011) (citing Burlington N. & S.F.R. Co. v. White, 548 U.S. 53 (2006)). The applicable anti-retaliation provision here prohibits employer actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68.

Neither Title VI nor Title IX contain a statute of limitations;[1] thus, this court must look to the most analogous provisions of North Carolina law to determine the applicable period of limitations. Martin v. Clemson Univ., 654 F.Supp.2d 410 (D.S.C. 2009). In Franks, the appellate

---

1   The court notes that under 28 U.S.C. § 1658, passed on December 1, 1990, Congress prescribed a four-year statute of limitations for federal laws that do not specify a limitation period and were enacted after December 1, 1990. Vuong v. New York Life Ins. Co., 2009 WL 306391, at *9 (S.D.N.Y. Feb. 6, 2009), aff'd sub nom, Pheng Vuong v. New York Life Ins. Co., 360 Fed. App'x. 218 (2d Cir. 2010). Such residual statute of limitations is, therefore, only applicable to plaintiff's Section 1981 claim as that provision was amended after 1990 as part of the Civil Rights Act of 1991.

court held that North Carolina's personal injury statute was the most analogous to plaintiff's Title VI claim, making North Carolina's three-year statute of limitations applicable. Id. at 194. Thus, to the extent plaintiff has alleged that he was discharged in violation of Titles VI and IX, such adverse employment action falls within the applicable period. As to other actions of defendant that allegedly violated Titles VI and IX but are outside the three-year period of limitations, such a "claim may appropriately extend even to acts that occurred before the relevant limitations period, because the hostile work environment continued within the limitations period as well." White v. BFI Waste Servs., LLC, 375 F.3d 288, 293 (4th Cir. 2004) (Title VII hostile work environment claim). The statute of limitations has, therefore, not expired on plaintiff's claims under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688, and Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d. The motion is denied.

## IV.     Conclusion

Plaintiff alleges that defendant Board discriminated against him based on race and took retaliatory action after he reported a sexual assault. Defendant has lodged several arguments in its Motion to Dismiss (#20) alleging that plaintiff has failed to state a claim upon which relief could be granted. At this point in the proceedings, the court must interpret the facts in the light most favorable to the plaintiff. Moreover, the court is satisfied that the plaintiff has pled sufficient facts as to make out one or more claims. Accordingly, it will grant the plaintiff leave to amend the complaint for a second time as to reshape the legal arguments therein into cognizable claims.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss the Amended Complaint (#20) is **DENIED** without prejudice. Plaintiff is **GRANTED** leave to amend the Amended Complaint (#19) to comply with the above-stated guidance within fourteen (14) days from the issuance of this Order.

Signed: January 18, 2017

Max O. Cogburn Jr.
United States District Judge