UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00552-MOC-DSC

| | |
|---|---|
| **JAMES ROBERT WHITE,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| ) | |
| **GASTON COUNTY BOARD OF EDUCATION,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the defendant's Motion to Enforce Settlement Agreement (#87) and Motion to Compel (#99), plaintiff's counseled Motion to Continue Trial (#92) and Motion to Quash (#95), and plaintiff's *pro se* Motion for All Documents to be Forwarded to Plaintiff (#101).

### FINDINGS AND CONCLUSIONS

**I.  Background**

The Motion to Enforce Settlement Agreement was initially set for hearing on August 15, 2018.[1] At that hearing, the parties were not prepared to proceed with an evidentiary hearing. The Court reset the hearing for August 21, 2018. Between those dates, plaintiff filed his Motion to Quash Subpoena (#95), seeking to terminate a subpoena by defendant that required plaintiff to

---

[1] 08/09/2018  view  NOTICE of Hearing: Final Pretrial Conference set for 8/15/2018 09:00 AM in Courtroom, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. Settlement Enforcement Hearing set for 8/15/2018 09:00 AM in Courtroom, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. This is your only notice - you will not receive a separate document.(chh) (Entered: 08/09/2018)

bring to the hearing documents he mailed *pro se* and *ex parte* to Chambers after the settlement was announced in June 2018.[2]

On August 21, 2018, a plenary evidentiary hearing was conducted. First, the Court took up the Motion to Quash as defendant contended that the documents plaintiff improperly sent to the Court could bear on settlement enforcement. Without objection from the parties, the Court conducted an *in came*ra review of the documents plaintiff mailed to Chambers in June. After conducting such review, the Court determined that such documents had no bearing on whether a settlement had been reached, but instead were concerned with the details of the attorney-client relationship. While the Court agrees with the defendant that a plaintiff sending documents to a third party certainly results in waiver of the attorney-client privilege as to those documents, there simply was no reason to compel the disclosure as the documents had no bearing on the issue of whether an agreement had been reached or whether plaintiff's counsel had actual authority to accept the settlement on his behalf. As the Court stated at the hearing, the Court must balance defendant's need for the documents with the public and judicial interest in preserving the attorney-client relationship even in circumstances were a party has acted in a manner inconsistent with maintaining the privilege. Here, that balance is struck in favor of quashing the subpoena. While the Court agrees with defendant that plaintiff, who holds a doctorate, is well educated, education in one area does not always translate into familiarity with a specialized area, such as law. The Court has, however, placed such documents into the record and sealed them to preserve a record for appeal.

After considering the documents, the Court then considered defendant's Motion to Enforce

---

2    Those documents were returned to plaintiff's counsel at the direction of the undersigned, who had not reviewed them substantively. Counsel was directed to retain those documents to protect the record.

the Settlement Agreement (#87), the Memorandum in Support (#88), the Response in Opposition (#90), and the Reply (#93). In particular, the Court gave close consideration to the exhibits annexed to defendant Motion to Enforce, (#87-1 through #87-5) and the Declaration (#90-1) attached to the Response. Such review revealed both a normal exchange of email communications in furtherance of settlement and a normal post-settlement exchange of draft of documents, with one exception. Without explanation either in the pleadings or from the testimony at the hearing, counsel for plaintiff changed the previously agree-to settlement amount of $150,000.00 to the sum of $462,493.20.[3]

At the hearing, counsel who had negotiated the agreement for the respective parties testified. After listening to the testimony and observing the demeanor of counsel, the Court concluded that both attorneys testified truthfully, and both were very credible.

First, Jenny Sharpe, former counsel for plaintiff testified. Here testimony revealed that the parties had settled on the amount of $150,000.00 as the monetary component of the settlement, inclusive of attorneys' fees and costs. Here testimony also revealed that not only did counsel have actual authority to accept that amount, plaintiff was in the room with counsel during the negotiations and when settlement was accepted. When questioned at the hearing as to why, after the settlement had been reached, she changed the settlement amount to a number that was more than treble the agreed-to amount, Ms. Sharpe refused to answer citing attorney-client privilege. Her testimony concerning the exchange of drafts was otherwise unremarkable as it evidenced that language was carefully crafted to protect the interests of the respective clients, which is typical in exchanging and redlining of drafts once a settlement is reached. Second, Deborah Stagner, counsel

---

3   Stagner Affidavit, at ¶ 19 and Ex. O.

for plaintiff, also testified. Here testimony was wholly consistent with her averments in her Affidavit (#87-4). Those averments are incorporated herein by reference.

## II. Legal Standard

Resolution of a motion to enforce a settlement agreement draws on standard contract principles. Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). District courts have inherent authority, derived from their equity power, to enforce settlement agreements. Id. (citing Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981)). Exercising this authority has the practical effect of entering a judgment by consent. Id.

To exercise this inherent power, a district court must (1) find that the parties reached a complete agreement and (2) be able to determine its terms and conditions. Moore v. Beaufort County, 936 F.2d 159, 162 (4th Cir. 1991); Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983). If the court finds that both factors have been satisfied by the parties, the court may summarily enforce the agreement if the excuse for nonperformance of the agreement is "comparatively insubstantial." Millner, 643 F.2d at 1009 (quoting Autera v. Robinson, 419 F.2d 1197, 1200 (D.C.Cir.1969)). "[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." Young v. FDIC, 103 F.3d 1180, 1195 (4th Cir. 1997).

If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms the district court may not enforce a settlement agreement summarily, but must instead "conduct a plenary evidentiary hearing in order to resolve that dispute" and make findings on the issues in dispute. Millner, 643 F.2d at 1009; Ozyagcilar, 701 F.2d at 308. If a district court concludes that no settlement agreement

was reached or that agreement was not reached on all material terms, then it must deny enforcement. Hensley, 277 F.3d at 541.

## III. Discussion

Here, the Court finds that the parties had reached a complete agreement on or before June 15, 2018, when they filed their stipulation, and that the terms and conditions of that settlement are readily discernable. Thus, Moore factors have been satisfied. Inasmuch as plaintiff has failed to offer a substantial reason for his nonperformance – in particular, no explanation as to why he changed the settlement amount to $462,493.20 after June 15, 2018, the Court will summarily enforce the agreement as the parties unequivocally agreed on monetary compensation of $150,000.00, inclusive of fees and costs. Millner, supra.

### A. The Material Terms of the Agreement

The parties reached an agreement on June 15, 2018. The material terms of that agreement are readily discernable from the exchange of correspondence as plaintiff clearly agreed to dismiss this case and release defendant from any and all claims, in return for defendant paying plaintiffs and their counsel $150,000.00, inclusive of attorneys' fees and costs. Further, the evidence presently clearly shows that counsel for plaintiff had actual authority to accept that offer and in fact accepted that amount while plaintiff was in the room. The other terms agreed-to are readily apparent in the exchange of draft settlement agreements between the parties. Plaintiff's Exhibit O (annexed to the Stagner Affidavit at #87-4, at p. 67 *et seq.*) is counsel for plaintiff's "redline" of the draft tendered by defendant. As discussed above, the plaintiff's redline included a damage figure, and a proposed division of that amount among plaintiff and counsel, which was clearly not agreed to by the parties as no evidence was offered that would support its inclusion. Those redlines

at #87-4, p. 69, are stricken. However, any redline or agreement concerning payment of plaintiff's portion (from the actual agree-to amount) into the retirement fund is appropriate and will be enforced. The other redlines on that page that would include where and when payment should be delivered are reasonable as they reflect determinations made as to non-material terms, and are routinely the subject matter of proper post-settlement drafting.

On page #87-4, pp. 69-70, inclusion of a requirement that defendant make payment in 15 days, is somewhat unusual, especially where both parties are represented by experienced employment litigators. Typically, payment in the business world is net 30 days. However, the redline is not unreasonable and will be included.

As to the redline on page #87-4, p. 70, that requires plaintiff to issue a Form 1099 and holds plaintiff only responsible as to his portion of any tax, are appropriate as such are consistent with proper tax administration in a settlement agreement.

The redline at #87-4, pp. 71-72, concerning the limits of the release provided are appropriate as they are consistent with the overall agreement of the parties.

The redline at #87-4, p. 74, appears to be an extension of the unsupported language concerning settlement amount, and is stricken. The original language in that portion of the agreement is restored.

Finally, plaintiff's proposed striking of what appears to be a standard "Non-Disparagement" provision will be allowed, even though such a term is found in nearly all settlement agreements in the employment arena. The Court notes that such non-disparagement would have worked in favor of plaintiff as it would have prevented defendant from disparaging plaintiff with future potential employers, while school boards are routinely disparaged as public

bodies. Since it does not appear that an explicit agreement existed for its inclusion and Dr. White wants it out, the Court will enforce that understanding.

### B. Lack of Reason for Non-Performance of Such Material Terms

While counsel for plaintiff offered no evidence as to why they redlined the agreed-to amount and included a figure that was treble the amount that had been agreed to, it is clear that the real reason such number was changed was that plaintiff was unhappy with the deal he struck. That deal was clearly a contract negotiated at arms-length with no material terms left open. While the language of the settlement agreement was subject to drafting and editing, there was no evidence that plaintiff had bargained for any substantial departure or variance from standard language included in settlement agreements or releases. It is equally clear that counsel had actual authority to accept the deal on his behalf. Indeed, the evidence showed that plaintiff was in the room and provided his attorneys authority to accept the deal at the time it was reached.

## IV. Conclusion

The Court concludes that the agreement is complete, as it disposes of the case in its entirety. As shown above, the material terms and conditions are easily determined. Moore, 936 F.2d at 162. Plaintiff does not offer a comparatively substantial reason for nonperformance of that settlement agreement. Millner, 643 F.2d at 1009. The record before the Court indicates that plaintiff was at all times represented by skilled counsel, who the Court knows are zealous advocates in employment disputes and in protection of civil rights. While plaintiff may have had second thoughts about the agreement, second thoughts are not a valid reason to deny enforcement of an otherwise valid settlement agreement. Young, 103 F.3d at 1195. The settlement reached on or about June 15, 2018, is a legally binding agreement – a contract – which is well within the realm

of similar agreements reached at arms-length in this Court, including those reached by plaintiff's counsel. While no amount of money is ever full compensation for any injury, be it physical or emotional, the amount agreed to here is substantial and is in an amount that clearly represents a compromise between the parties. The amount agreed to will provide meaningful compensation to plaintiff and also vindicates certain positions he asserted in this litigation.

Finding no substantial reason offered for nonperformance, the court will order enforcement of the valid settlement agreement.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Enforce Settlement Agreement (#87) is **GRANTED** and

(1) the defendant shall submit to counsel for plaintiff a Settlement Agreement, in a form substantially similar to its Exhibit O, but modified to be consistent with the findings discussed in Section III A above;

(2) such Settlement Agreement, releases, and any other papers, shall be consistent with those findings and shall be delivered to counsel for plaintiff not later than August 31, 2018;

(3) upon unconditional execution and return of those documents, payment shall be made to plaintiff in a manner consistent with the settlement agreement within 14 days of defendant's receipt of such return. After such payment clears, the parties shall file with this court a Stipulation of Dismissal consistent with Rule 41, Federal Rules of Civil Procedure; and

(4) if plaintiff fails to unconditionally execute and return to defendant the required Settlement Agreement, releases, and other documents within 14 days of delivery, defendant shall

submit to the Court a proposed Judgment consistent with the terms of the Settlement Agreement (as herein construed) and this Order.

The parties shall bear their own costs and fees in the prosecution and defense of the instant Motion to Enforce Settlement Agreement.

**IT IS FURTEHR ORDERED** that

(1) the defendant's Motion to Compel (#99) is **DENIED**,

(2) plaintiff's counseled Motion to Continue Trial (#92) is **DENIED** as moot;

(3) plaintiff's counseled Motion to Quash (#95) is **GRANTED**,

(4) plaintiff's *pro se* Motion for All Documents to be Forwarded to Plaintiff (#101) is **DENIED** as plaintiff is represented by counsel who can, at his expense, provide him with copies of documents filed in this matter; and

(5) in accordance with Rule 37, Federal Rules of Civil Procedure, the plaintiff shall bear his own costs as to the motions to compel and to quash inasmuch as such inquiry was occasioned by plaintiff's inappropriate *pro se* and *ex parte* submission to Chambers.

Signed: August 29, 2018

Max O. Cogburn Jr
United States District Judge